UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VICTOR L. BERGERON,

    Plaintiff,

CASE NO. 02-CV-10298-BC

v.

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES E. BINDER

MICHAEL FISCHER,
Iosco County Sheriff,
COUNTY OF IOSCO,
HOWARD HANFT,
Ogemaw County Sheriff,
COUNTY OF OGEMAW,

    Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS MICHAEL FISCHER AND COUNTY OF IOSCO'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION
FOR SUMMARY JUDGMENT**
(Dkt. 19)
**AND DEFENDANTS HOWARD HANFT AND COUNTY OF OGEMAW'S
MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE 12(c) AND RULE 56 AND UNITED
STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF MICHIGAN LOCAL RULE 7.1**
(Dkt. 21)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion by

Defendants Fischer and Iosco County be **GRANTED IN PART** and **DENIED IN PART**

as follows:



- that the official capacity claims against Defendant Fischer be **DISMISSED** as duplicative;

- that summary judgment be **GRANTED** as to Defendant Fischer on the claims brought against him in his personal capacity; and

- that summary judgment be **DENIED** as to Defendant County of Iosco.

**IT IS FURTHER RECOMMENDED** that the motion by Defendants Hanft and Ogemaw County be **GRANTED** as follows:

- that the official capacity claims against Defendant Hanft be **DISMISSED** as duplicative;

- that summary judgment be **GRANTED** to Defendant Hanft on the claims brought against him in his personal capacity; and

- that summary judgment be **GRANTED** to Defendant County of Ogemaw.

## II.   <u>REPORT</u>

### A.  Introduction & Procedural History

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on December 18, 2002. Proceeding *pro se,* Plaintiff Victor Bergeron brings suit under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated for failure to pay child support in two Michigan county jails in late 2000 and early 2001.  The complaint names as defendants the sheriffs of both counties, who are being sued in both their official and personal capacities, as well as the County of Iosco and the County of Ogemaw.

This case is now before the Court on Defendants Fischer's and County of Iosco's initial dispositive motion (Dkt. 19; Supporting Aff. Dkt. 20), to which Plaintiff filed a response (Dkt. 22) and Defendants a reply (Dkt. 25). Also before the Court is Defendants Hanft's and County of Ogemaw's dispositive motion (Dkt. 21), to which Plaintiff filed a response (Dkt. 23) and Defendants a reply (Dkt. 26). Pursuant to E.D. Mich. LR 7.1(e)(2), the motions are ready for Report and Recommendation without oral argument.

### B. Factual Background & Plaintiff's Claims

In Count One of Plaintiff's complaint, which is entitled "Failure to Provide Timely Medical Treatment for Life Threatening Condition," Plaintiff states that he was arrested on December 27, 2000, pursuant to a warrant from Ogemaw County, Michigan, for failure to pay child support.[1] Plaintiff claims that when he was lodged in the Iosco County Jail, he informed the booking officer that he is an insulin-dependent diabetic, and asked to see the medical staff about his needs. (Compl., Dkt. 1 at ¶ 10.) Plaintiff asserts that the booking officer deliberately chose to ignore his medical needs and requests, and as a result, later that day Plaintiff was rushed to a local hospital in "a condition that amounts to a state of diabetic coma." (*Id.* at ¶ 12.) After spending two days in the hospital, Plaintiff claims that he was returned to Iosco County Jail and "still not given treatment in compliance with doctor's orders." (*Id.*)

---

[1]Although it is not material for purposes of this motion, I note that Defendants maintain that Plaintiff was actually arrested on December 26, 2000, in Bay County, Michigan, lodged in the Bay County Jail overnight, and then transported to the Iosco County Jail the following day. (*See* Def. Hanft & Ogemaw County's Mot., Dkt. 21 at ¶ 2.)

Plaintiff alleges that his right to not have his "keeper and his keeper's jail staff" treat his life-threatening medical needs with deliberate indifference was violated, and that he experienced pain and suffering and "almost died as a result thereof because of the acts and omissions of the jail Booking Officer, and indirectly as a result of [Sheriff] Fischer's inaction. Fischer had reason to know what the law and constitution require of him as the sheriff and keeper of prisons, and that he could have taken action to prevent what happened . . ., but failed to do so." (*Id.*) Plaintiff also alleges that Defendant Fischer is directly responsible for what happened because he "failed to enforce his own policies for prisoner medical treatment, and because Fischer failed to properly supervise his jail staff and the treatment of prisoners in his jail." (*Id.*)

Plaintiff further claims in Count One that after he was transferred to the Ogemaw County Jail in February 2001, he informed the booking officer there of his condition, including the amount and type of insulin he needed, but again he "was denied his insulin and other diabetic needs, but instead was given insulin that was designated community property so to speak, and not prescribed for him or his personal condition." (*Id.* at ¶ 15.) Plaintiff alleges that, as a result, he once again became "very ill." (*Id.*) He asserts that Defendant Sheriff Hanft and the Defendant County of Ogemaw are liable for deliberate indifference to his medical needs and for their failure and refusal to abide by the long-standing law regarding prisoner's rights. (*Id.* at ¶ 16.) Finally, Plaintiff claims that Sheriff Hanft and Ogemaw County are indirectly liable for the unconstitutional treatment he received at the Iosco County Jail which led to his hospitalization, because Ogemaw County has a duty to contract with

4

other counties for jail services only after inspecting the other counties' facilities to insure that they provide lawfully required medical care. (*Id.* at ¶ 14.)

In Count Two, Plaintiff claims that the suffering he endured as a result of the inadequate medical care amounted to punishment without due process of law. (*Id.* at ¶ 19.)

Count Three alleges that the named defendants had adequate notice of the existing law regarding medical care for prisoners, that they failed to comply with such laws, and that their failure to comply was due to their deliberate indifference. (*Id.* at ¶¶ 20-22.)

Counts Four and Five allege that Plaintiff lost income and incurred thousands of dollars in medical bills as a result of the defendants' failure to provide adequate and necessary medical care.

Plaintiff seeks as relief a declaratory judgment finding that his constitutional rights were violated, compensatory damages, punitive damages, costs, attorney fees, and any other relief to which he may be entitled.

## C. Defendants' Motions

### 1. Summary of Defendants' Arguments

Defendant County of Iosco moves for judgment on the pleadings on the ground that Plaintiff's complaint does not allege that an Iosco County policy or custom caused his alleged injuries. Defendant Fischer moves for judgment on the pleadings, stating that he was not the Iosco County Sheriff at the time of Plaintiff's initial incarceration and hospitalization, and further pointing out that Plaintiff's complaint does not contain any allegation that he directly participated in the denial of Plaintiff's medical care. Defendants Iosco County and Sheriff

Fischer also claim that they are entitled to qualified immunity, asserting that even if a mistake was made in not transporting Plaintiff to the hospital earlier, the evidence nevertheless shows that he was taken to the hospital on the same day he was booked into the Iosco County Jail, and therefore the mistake was "reasonable" and covered by the qualified immunity defense. (Def.'s Mot., Dkt. 19 at 2-3.)

Defendants County of Ogemaw and Sheriff Hanft move for judgment on the pleadings on the ground that Plaintiff's complaint does not allege that an Ogemaw County policy or custom caused his injuries, and does not assert that Defendant Hanft directly participated in the denial of medical care while Plaintiff was incarcerated in the Ogemaw County Jail. These Defendants also claim that they are entitled to summary judgment because the evidence demonstrates that Plaintiff's medical needs were not responded to with deliberate indifference, and in any event they are entitled to qualified immunity. (Def.'s Mot., Dkt. 21 at 2-4.)

### 2. Motion Standards

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure may be brought after the close of the pleadings to raise various Rule 12(b) defenses. *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir. 1993). A Rule 12(c) motion asserting that the complaint does not state a cognizable claim is reviewed under the same standards that govern motions brought under Rule 12(b)(6). *See* FED. R. CIV. P 12(h); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511 (6th Cir. 2001); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). "The purpose of Rule 12(b)(6) is to allow

a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). However, it is well-settled that "*pro se* complaints and other documents, 'however inartfully pleaded,' are held to 'less stringent standards than formal pleadings [and documents] drafted by lawyers,' and are to be liberally construed." *Perreault v. Hostetler*, 884 F.2d 267 (6th Cir. 1989) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). Accordingly, when deciding a dismissal motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). If matters outside of the pleadings are considered by the court, the motion is to be treated as one for summary judgment. FED. R. CIV. P. 12(c).

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, and will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In responding to a motion for summary judgment, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 3. Governing Law

### a. 42 U.S.C. § 1983

"A § 1983 claim must present two elements: (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Liability under § 1983 must be based on the personal involvement of the defendant, *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995), and the involvement must be that of active unconstitutional behavior; liability cannot be based upon "a mere failure to act." *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto defendants merely because they hold supervisory positions over one who committed a constitutional violation. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, to demonstrate supervisory liability, it must be shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it," *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), or that the supervisor "abandon[ed] the specific duties of his position" and this failure to do his job was "likely to result in the violation of . . . constitutional rights." *Hill v. Marshall*, 962 F.2d 1209, 1213-14 (6th Cir. 1992) (en banc).

Municipalities can be held liable under § 1983 only where the action of the municipality itself can be said to have caused the harm, as when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at

690. However, a municipal custom or policy which has not been formalized as law may also

be actionable under § 1983. A municipality "may be sued for constitutional deprivations

visited pursuant to governmental 'custom' even though such a custom has not received

formal approval through the body's official decision-making channels." *Berry v. City of

Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). To attach such liability to the municipality, a

plaintiff must show "a direct causal link between the custom and the constitutional

deprivation." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

A municipality may be liable under § 1983, in narrow circumstances, "for

constitutional violations resulting from its failure to train municipal employees." *City of

Canton v. Harris*, 489 U.S. 378, 380, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). The

Supreme Court explained that

> it may happen that in light of the duties assigned to specific officers or
> employees the need for more or different training is so obvious, and the
> inadequacy so likely to result in the violation of constitutional rights, that the
> policymakers of the city can reasonably be said to have been deliberately
> indifferent to the need. In that event, the failure to provide proper training may
> fairly be said to represent a policy for which the city is responsible, and for
> which the city may be held liable if it actually causes injury.

*Id.* at 390 (footnote omitted).

### b.  Deliberate Indifference to Serious Medical Needs

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed.

2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners

constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual

Punishments Clause of the Eighth Amendment to the Constitution. A pretrial detainee, although not protected by the Eighth Amendment, enjoys analogous protection under the Fourteenth Amendment's Due Process Clause. *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001).

The Supreme Court in *Estelle* clarified that "[t]his conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. The Court reasoned:

> In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 105-06 (footnote omitted).

Deliberate indifference to serious medical needs can be "manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. To state a claim for a delay in medical treatment, an inmate must place verifying medical evidence in the record to establish that the delay had a detrimental effect. *Napier v. Madison County*, 238 F.3d 739, 742-43 (6th Cir. 2001).

The standard for deliberate indifference is two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *See id.* The plaintiff must show that the defendant's conduct demonstrated a level of deliberateness "'tantamount to an intent to punish.'" *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988)).

Although a prisoner plaintiff may be able to state a claim of deliberate indifference if the medical care given was "so willfully inadequate as to amount to no treatment at all," generally, federal courts are reluctant to second guess the discretionary judgment of medical personnel and "constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976). The Sixth Circuit has also clarified that prisoners do not have a "constitutional right to adequate medical care," noting that if that were the case, simple medical malpractice would meet the standard of failure to give "adequate" or "necessary" care. Instead, the Supreme Court's cases on medical care of prisoners make it clear that the right is properly understood as the right not to have one's serious medical needs treated with deliberate indifference. *Williams v. Mehra*, 186 F.3d 685, 691 n.2 (6th Cir. 1999) (en banc).

12

### c.   Qualified Immunity

Defendants assert that they are entitled to qualified immunity.  The U.S. Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  *Id.*  Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts.  'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'"  *Green v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity is only available to individual defendants for claims against them in their personal capacities.  *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980); *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997).  It "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or

as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). "[A] defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery" unless "the plaintiff's allegations state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). After discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.*

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. **"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."** If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

*Greene*, 310 F.3d at 894 (emphasis added).

### 4. Official Capacity Claims Against Defendants Fischer & Hanft

Plaintiff has named Defendants Fischer and Hanft in their personal capacities, as well as in their official capacities as sheriffs of their respective counties. Plaintiff has also named both counties as defendants.

In an official-capacity suit against a local governmental official, the real party in interest is not the named official, but the local governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") Therefore, in this case, the claims asserted against Defendants Fischer and Hanft in their official capacities are duplicative of the claims asserted against Iosco County and Ogemaw County, and accordingly I suggest that they be dismissed.

### 5.   Claims Against Iosco County

In the complaint, Plaintiff alleges that when he was lodged in the Iosco County Jail, he informed the booking officer that he is an insulin-dependent diabetic, and asked to see the medical staff about his needs. (Compl., Dkt. 1 at ¶ 10.) Plaintiff asserts that the booking officer deliberately chose to ignore his medical needs and requests, and as a result, later that day Plaintiff was rushed to a local hospital in "a condition that amounts to a state of diabetic coma." (*Id.* at ¶ 12.) Plaintiff has provided documentation to support these allegations in the form of a one-page Patient Discharge Summary from Tawas St. Joseph Hospital. (Dkt. 13, Ex. P-1.) The summary was prepared by C. David Wright, M.D., and states that Plaintiff was admitted to the hospital on December 27, 2000, in a state of "diabetic ketoacidosis." Plaintiff's "white count initially was 13,000" and his "random sugar on admission was 425." The summary states that two days later, on December 29, 2000, Plaintiff was discharged to the Iosco County Jail with specific instructions, including the need for daily insulin according

to "the Regular insulin sliding scale" and the necessity of checking Plaintiff's blood sugars four times a day.

Plaintiff claims that after he was returned to the Iosco County Jail, he was "still not given treatment in compliance with doctor's orders." (Compl. at ¶ 12.) More specifically, Plaintiff states in his affidavit that although he repeatedly informed the jail staff that his diabetic condition required three things – "daily exercise, a diabetic diet, and insulin at regular intervals"– the jail staff "either stated that there was nothing that could be done to address my diabetic requirements or they did not respond at all." (Pl.'s Aff., Dkt. 22, ¶¶ 11 & 19.) He also states, however, that he was given insulin every day, although he claims that it was administered at sporadic intervals (*id.* at ¶ 13), and was "not prescribed for him or his personal condition." (Compl., Dkt. 1 at ¶ 15.)

Plaintiff named the County of Iosco as a defendant in this case, and alleged in the complaint that his right to not have his "keeper and his keeper's jail staff" treat his life-threatening medical needs with deliberate indifference was violated. He chose not to name the booking officer as a defendant, but named the sheriff in his official capacity,[2] which is the equivalent of naming the County, and alleged liability on the grounds of failure to enforce the policies for prisoner medical treatment and failure to properly supervise the jail staff with regard to the treatment of the prisoners with diabetes. (*Id.* at ¶ 12.)

Defendant Iosco County filed its motion for judgment on the pleadings which is now before the Court, arguing that Plaintiff failed to state a claim for municipal liability because

---

[2]Plaintiff was apparently unaware that Michael Fischer was not the sheriff during Plaintiff's entire period of incarceration and hospitalization in Iosco County.

Plaintiff did not allege in his complaint that a governmental policy or custom caused a constitutional violation. (Dkt. 19, Br. in Supp. at 9.)  In his response to this motion, Plaintiff explains that "the impermissible policy and/or custom involves the Sheriff's failure to adequately train his staff on the treatment of individuals with diabetes," and that this is the "basis upon which liability may attach to the County as well as the Sheriff." (Dkt. 22 at 12.) Plaintiff further alleges that the failure to train the jail staff on the proper treatment of inmates with diabetes "demonstrates deliberate indifference in light of the fact that at least 10 million Americans as of 1997 suffered from diabetes."[3]

Defendant Iosco County filed a reply, arguing that the County should be dismissed because the complaint did not specify that liability was being premised on a "failure to train" theory. (Dkt. 25 at 2.)  Alternatively, Defendant Iosco County asserts that Plaintiff should not be allowed to amend his complaint to add a "failure to train" claim against the County of Iosco because the claim has no merit, or in other words because Plaintiff has failed to state a claim.  Defendant argues that (1) the record shows that Plaintiff was sent to the hospital on the same day he arrived at the Iosco County Jail, and therefore no reasonable jury could find that deliberate indifference occurred; (2) "even if the Plaintiff could prove that the jail personnel made a mistake in not transporting him earlier in the day, such a mistake would clearly fall within the intended broad protections provided by qualified immunity as a

---

[3]Plaintiff has attached to his response a document from the National Center for Health Statistics' internet website which states that, as of 1997, the number of Americans with diabetes was 10 million, and that 69,301 deaths in the U.S. in the year 2000 were attributed to diabetes. (Dkt. 22 at Ex. 3.)

reasonable mistake";[4] and (3) even if the Plaintiff was able to prove a deficiency in training, the Plaintiff cannot prove that the deficiency was "closely related" to his ultimate injury. (*Id.* at 3.)

I first suggest that Plaintiff's claim against the County of Iosco should not be dismissed on the ground that Plaintiff did not use the exact words "failure to train" in his complaint. Plaintiff is a *pro se* prisoner, and his pleadings are to be liberally construed and held to a less stringent standard than similar pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Furthermore, Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court recently explained that

> [s]uch a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *See id.*, at 47-48, 78 S. Ct. 99; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-169, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512-13, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

Plaintiff points out that discovery has not yet taken place in this case, and that he "has not been able to acquire through the discovery process any and all policies pertaining to the

---

[4]I note that this argument was made in a joint brief filed by Defendants Fischer and County of Iosco, and that the defense of qualified immunity does not apply to the claims against the Defendant County which are being discussed in this section.

treatment of inmates with diabetes," and that such policies (if there are any) are "in the possession of the alleged wrongdoers." (Dkt. 22 at 12 (citing *Perry v. McGinnis*, 209 F.3d 597, 600 (6th Cir. 2000).) Plaintiff also points to *Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563 (E.D. Mich. 2002), where the court noted that "it is the district court's responsibility to apply the proper legal standard, regardless of the misconceptions by the parties." *Id.* at 570 (quoting *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir. 2000)).

In this case, considering that Plaintiff is a *pro se* prisoner and his pleadings must be construed liberally, I suggest that the complaint adequately gave fair notice to Defendant County of Iosco of the claim of municipal liability, and that it is not entitled to dismissal on this ground. I further suggest that there is no need for Plaintiff to amend his complaint, because the "failure to train" allegation was subsumed within Plaintiff's allegations that the County failed to properly supervise its jail staff so as to enable the staff to appropriately handle prisoners with diabetes. Alternatively, I suggest that Plaintiff be granted leave to amend his complaint.

With regard to Defendant Iosco County's assertion that, even if Plaintiff has raised a failure-to-train claim, it should be dismissed because it has no merit, I note that such a claim consists of three elements: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the [municipality's] deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Regarding the first two elements, Plaintiff has alleged that even though the jail officers were likely to encounter diabetic inmates, the County of Iosco was deliberately indifferent to the needs of those inmates through a policy or custom of not training the jail personnel to adequately respond to that task. At this stage of the case, Defendant Iosco County has not placed any evidence in the record regarding its training program for jail officials, but these allegations by Plaintiff, I suggest, do rise to the level of stating a claim with respect to the first two elements.

The third element concerns the nexus between the alleged failure to train and Plaintiff's injury. Plaintiff alleges that he was arrested and booked in the Iosco County Jail on December 27, 2000, and that he informed the booking officer of his serious needs related to his medical condition. Sometime on December 27, 2000, Plaintiff was admitted to the hospital in a state of "diabetic ketoacidosis" with his sugar level being at 425. Plaintiff claims that, had the jail staff been trained to adequately respond to his medical needs, this delay in meeting his needs would not have occurred. The fact that the alleged delay caused injury can be inferred from the Patient Discharge Summary. Plaintiff further alleges that his needs for a diabetic diet and regular exercise were met with deliberate indifference after he was returned to the Iosco County Jail, and that the County policy or custom responsible for this indifference was the failure to train the officers. In light of these contentions, I suggest that Plaintiff has adequately alleged that there is a direct relationship between the failure to train the officers and his injury.[5]

---

[5] Plaintiff alleges that his injuries also included the pain and suffering of a two-day hospital stay, in addition to numerous symptoms of uncontrolled diabetes, such as feelings of lethargy, uncontrollable thirst,

Accordingly, taking Plaintiff's allegations as true, since no discovery has been taken in this matter, I suggest that Plaintiff has stated a claim against the County of Iosco for deliberate indifference in failing to train its jail officials to adequately respond to the needs of diabetic inmates which resulted in an alleged violation of Plaintiff's constitutional rights. I further suggest that Defendant's argument that no reasonable jury could find deliberate indifference in light of Plaintiff's admission that he was taken to the hospital on the same day he arrived at the Iosco County Jail is unavailing. Common sense and human experience surely indicate that, while some serious medical needs may be reasonably met within 12 to 24 hours, many others require a much quicker response. *See, e.g., Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000) (prison guard's delay for several hours to obtain help for inmate suffering from severe chest pains was sufficiently serious to satisfy objective element of deliberate indifference test).

Accordingly, I suggest that Plaintiff has stated a claim against the County which is not subject to dismissal, because, accepting the factual allegations as true, I cannot find that "plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996). In order for the County to be liable under § 1983, there must be evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. At this stage, of

---

frequent urination, lack of blood circulation, sweating, swollen ankles, periodic loss of consciousness, and blurred vision which remains to this day.

course, there is nothing in the record regarding the training which occurred in Iosco County. I suggest that discovery is required to further develop this claim.

### 6. Personal Capacity Claims Against Defendant Fischer

Plaintiff's complaint alleges that Defendant Fischer was the sheriff of Iosco County at all times relevant to this lawsuit, that the jail staff was deliberately indifferent to his needs as a diabetic, and that he "almost died as a result thereof because of the acts and omissions of the jail Booking Officer, and indirectly as the result of Fischer's inaction." (Compl., Dkt. 1 at 6.) Plaintiff claims that Defendant Fischer should have known what the law required, and should have taken action to prevent what happened, but failed to do so. (*Id.*) Plaintiff further alleges that Defendant Fischer is directly liable because he "failed to enforce his own policies for prisoner medical treatment, and because Fischer failed to properly supervise his jail staff and the treatment of prisoners in his jail." (*Id.* at 7.)

Defendant Fischer first asserts that, although Plaintiff has divided his complaint into five "counts,"[6] it actually states only one claim, that of deliberate indifference to serious medical need, which in this cases arises under the Fourteenth Amendment due to Plaintiff's status as a pretrial detainee, but which is identical to the protection afforded convicted prisoners pursuant to the Eighth Amendment's Cruel and Unusual Punishments Clause. I suggest that Defendant Fischer is correct. Counts Two and Three are merely reiterations of

---

[6]The counts are entitled: (1) "Failure to Provide Timely Medical Treatment for Life Threatening Condition"; (2) "Punishment without Due Process"; (3) "Failure to Comply with Existing Law"; (4) "Loss of Work and Income"; and (5) "Unjust Medical Bills."

Plaintiff's deliberate indifference claim, and Counts Four and Five relate to Plaintiff's request for compensatory damages.

Defendant Sheriff Fischer moves for judgment on the pleadings with regard to the claims brought against him in his personal capacity on the ground that Plaintiff failed to allege that Defendant Fischer directly participated in the alleged denial of medical care while Plaintiff was incarcerated at the Iosco County Jail. (Br. in Supp., Dkt. 19 at 10.) Defendant Fischer further moves for summary judgment on Plaintiff's claim that Fischer failed to properly supervise the booking officer and other jail staff. Defendant Fischer has supplied an affidavit in support of his motion in which he avers that, not only was he not present at the Iosco County Jail on December 27, 2000, the day Plaintiff arrived at the Iosco County Jail and was later taken to the hospital, but he was not even the sheriff on that date. (Fischer Aff., Dkt. 19, Ex. B at ¶¶ 3-4.)

Plaintiff responds with his own 7-page, 37-paragraph affidavit. He does not refute Defendant Fischer's contention that he was neither at the jail nor employed as the Iosco County Sheriff when Plaintiff first arrived at the jail and was taken to the hospital. The only mention of Defendant Fischer in Plaintiff's affidavit is where Plaintiff states that his Iosco County incarceration extended from December 26, 2000, through January 4, 2001, and that "Michael Fischer became the Sheriff of Iosco County prior to January 4, 2001." (Pl.'s Aff., Dkt. 22, Ex. 1 at ¶ 5.) The remainder of allegations in Plaintiff's affidavit as they relate to his period of incarceration at the Iosco County Jail refers only to the "jail staff." In his

response brief, Plaintiff also alleges that Defendant Sheriff Fischer is also liable for failing to adequately train his jail staff. (Dkt. 22, Br. at 12.)

I suggest that Defendant Fischer is entitled to summary judgment on the claims brought against him in his personal capacity. First, Plaintiff has not alleged that Defendant Fischer directly participated in the alleged deliberate indifference to his medical needs. Second, the evidence of record does not support the inference that Defendant Fischer acquiesced to or encouraged any such unconstitutional conduct, where it is unrefuted that Defendant Fischer was neither present at the jail on December 27, 2000, nor was he acting in the capacity of Iosco County Sheriff at that time. *See Bellamy*, 729 F.2d at 421.

I further suggest that Defendant Fischer is entitled to summary judgment on the claims that he failed to supervise the booking officer and failed to train the jail staff regarding handling prisoners with diabetes, where the facts of record demonstrate that Defendant Fischer was not the sheriff, and therefore not in a supervisory position over the jail staff or one where he was responsible for their training, during the relevant time period.

Accordingly, I suggest that Defendant Fischer is entitled to summary judgment because the record evidence does not "present[] a sufficient disagreement to require submission to a jury," but rather is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### 7. Claims Against Ogemaw County and Sheriff Hanft in his Personal Capacity

Defendants County of Ogemaw and Sheriff Hanft move for summary judgment and have attached to their motion affidavits and documentation in an effort to demonstrate that

Plaintiff did not suffer a violation of his right to not have his serious medical needs met with deliberate indifference while he was incarcerated at the Ogemaw County Jail from January 4, 2001, through March 18, 2001.

Defendant Hanft has provided an affidavit, wherein he avers that he had no involvement with Plaintiff's incarceration at the Iosco County Jail, and that he "did not authorize, approve or knowingly acquiesce in the withholding of medical care from the Plaintiff at any time while he was incarcerated in the Ogemaw County Jail from January 4, 2001, thru March 18, 2001." (Hanft Aff., Dkt. 21 at Ex. 3.)

Defendants also attached to their motion an affidavit from Gary Cowdrey, the Ogemaw County Jail Administrator. (Cowdrey Aff., Dkt. 21 at Ex. 4.) Cowdrey avers that: he had no involvement with Plaintiff's incarceration at the Iosco County Jail; upon his arrival at the Ogemaw County Jail, Plaintiff was placed on a special diabetic diet, was seen by a physician, and was provided insulin pursuant to a treatment plan prescribed by the doctor which lasted for the duration of Plaintiff's incarceration; Plaintiff never became acutely ill or required hospitalization during his stay at the Ogemaw County Jail.

Exhibit five attached to Defendants' motion consists of numerous jail forms pertaining to Plaintiff: a two-page Medical Receiving Screening Form which noted that Plaintiff had uncontrolled diabetes, had recently been hospitalized, and required insulin; a special diet form instructing that Plaintiff was to be placed on a 2,200 calorie diabetic diet; three pages of handwritten notes by Dr. Clark Pritts giving specific instructions on insulin doses, diet, blood sugar checks, etc.; and a four-page medical log showing that Plaintiff's blood sugar

level was tested four times each day (breakfast, lunch, supper, and snack), the level was recorded in the log, as was the amount and type of insulin administered after each blood test.

Plaintiff responded in opposition to Defendants' motion, claiming that he only saw a doctor two times during his stay at Ogemaw County Jail. (Dkt. 23 at 6.) Plaintiff further claims that he requested to see a physician on several other occasions, and the requests were denied. (*Id.*) In his attached affidavit, Plaintiff claims that the insulin was provided at sporadic intervals, that exercise was only allowed after two weeks and on a sporadic basis, and that the diet was too high in carbohydrates and sugar. (Pl.'s Aff., Dkt. 23 at Ex. 1.) He claims that he lost all control of his sugar level, suffered many symptoms such as uncontrolled thirst and lack of circulation, and yet the jail officials refused to send him to the hospital.

Defendants Hanft and Ogemaw County filed a reply and submitted additional documentation.  Gary Cowdrey, the Ogemaw County Jail Administrator, provided a supplemental affidavit. (Cowdrey Suppl. Aff., Dkt. 26 at Ex. 1.)  Cowdrey avers that: Plaintiff was lodged in an observation cell for his first 24 hours at the Ogemaw County Jail due to his report of recent hospitalization; after the first 24 hours, Plaintiff had access to large commons rooms for a minimum of 16 hours per day, 7 days per week, and further had the run of the halls, library and lounge one hour per day, 5 days per week, where he could have exercised any time he wanted as did the other inmates; Plaintiff was placed on a diabetic diet the day he arrived and remained on the diet until he was discharged; Plaintiff was seen by a physician the day he arrived and one other time at Plaintiff's request; the physician

prescribed the insulin to be provided to Plaintiff and such insulin was provided; Plaintiff was responsible for his blood sugar testing and administration of insulin; Plaintiff's medical log shows that Plaintiff tested his blood sugar and recorded the level four times per day during his incarceration; Plaintiff was never denied any opportunity to test his blood or administer insulin during his incarceration; Plaintiff was never taken to or admitted to the local hospital during his stay at the Ogemaw County Jail because no reason for emergency medical attention arose during that time, diabetes-related or otherwise.

Defendants also provide a copy of a Jail Medical Request form completed by Plaintiff on January 17, 2001, wherein Plaintiff requested medical attention, stating:

> Been having many problems with insulin, diet, reactions, and getting people to understand. I have a skin rash that should have been taken care of one week ago, and no tests have been run to determine why I am having so many problems from Iosco Co. Jail.

(Ogemaw Co. Jail Medical Request, Dkt. 26 at Ex. 2.) The form indicates that Plaintiff was notified later that day by the jail staff that he would be scheduled to see the physician on his next visit, and that Plaintiff was taken to the doctor's office two days later on January 19, 2001. Defendants contend that this was the only request to see a doctor made by Plaintiff during his period of incarceration.

Defendants Ogemaw County and Sheriff Hanft also attached to their reply a copy of the Jail Medical Policy, which consist of pages 45 through 50 of the Jail Policy Directives Manual. (Dkt. 26 at Ex. 3.) The policy is comprehensive, addressing topics such as procedures for health screening upon booking, emergency medical care, completion of an

inmate medical card, administration of prescribed controlled and non-controlled substances, injections, and others.

I suggest that the record evidence provided by Defendants Hanft and the County of Ogemaw demonstrate that Plaintiff's serious medical needs were not treated with deliberate indifference. *See Cooper v. Shelby County Justice Center*, No. 99-6365, 2000 WL 924606, at **2 (6th Cir. June 26, 2000) (unpublished) (affirming *sua sponte* dismissal of prisoner's Eighth Amendment deliberate indifference claim as frivolous because plaintiff admitted in his complaint that he had been examined by medical staff during his confinement and that his allegations stemmed solely from the treatment he received). Unlike Defendant Iosco County, Defendant Ogemaw County submitted evidence to show that Plaintiff received ongoing medical treatment during his incarceration at Ogemaw County, which began immediately upon his arrival at that facility. While Plaintiff may not have agreed with the medical providers' assessments and methods of treatment, it certainly cannot be said that the care given was "so willfully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860-61 n.5. I further suggest that the reasonable inference from this evidence is that the jail officials did not act with the intent to unnecessarily and wantonly inflict pain upon Plaintiff, as is required for a showing of deliberate indifference.

Accordingly, I suggest that Plaintiff's claims, in light of the evidence, amount at most to claims of negligence or medical malpractice, which neither fall under the ambit of the Constitution nor implicate any federal rights. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("Medical decisions that may be characterized as 'classic example[s] of matter[s]

for medical judgement,' . . . such as whether one course of treatment is preferable to another, are beyond the Amendment's purview."); *Ward v. Smith*, No. 95-6666, 1996 WL 627724 (6th Cir. Oct. 29, 1996) (unpublished) ("The administering of an appropriate diet to a prisoner with diabetes is a matter of medical judgment. . . . [W]here the plaintiff has been treated for diabetes but disagrees with the efficacy of the treatment, he has, at best, alleged a claim for medical negligence.").

Accordingly, I suggest that Defendants Ogemaw County and Sheriff Hanft's motion for summary judgment be granted because, after examining the evidence designated by these defendants, I find that the evidence does not present a sufficient disagreement to require submission to a jury, but rather that it is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Further, because I find that summary judgment for Defendants Ogemaw County and Sheriff Hanft is warranted on the issue of whether there was an underlying violation of Plaintiff's constitutional right to not have his serious medical needs met with deliberate indifference, I further suggest that there is no occasion to analyze the claims of failure to supervise or failure to train with regard to the County of Ogemaw or Defendant Hanft, or Defendant Hanfts' assertion of qualified immunity, as these issues are precluded by a finding of summary judgment for defendants on the underlying allegation of a constitutional violation.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED:   July 31, 2003

Copies to:   Mr. Victor Bergeron, 3807 E. Hardwood Heights, Prescott, MI 48756-9390
Mr. Thomas C. Wimsatt, Chaklos Jungerheld, P. O. Box 6128, Saginaw, MI 48608-6128
Mr. Bradley D. Wierda, Cummings McClorey, 3939 M-72 East, Williamsburg, MI 49690-9359
Honorable David M. Lawson, United States District Judge